[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS
The plaintiffs, Maria Montalvo and Carlos I. Reyes, two Connecticut residents, have filed an action against the defendant, the Adirondack Trust Co., a New York banking institution, principally based in Saratoga Spring, New York and defendant Alberto V. Zappala.
In their complaint, the plaintiffs allege that on January 6, 1999, they sustained personal injuries in a motor vehicle collision. Thereafter, they were represented by Zappala, an attorney, practicing law in New Haven, Connecticut. The defendant Zappala negotiated settlements of the plaintiffs' personal injury claims without their consent.
On or about January 6, 1999, the State Farm Mutual Automobile Insurance Company, the tortfeasor's insured, executed and delivered a check drawn on the defendant Adirondack and payable to the order of "Maria Montalvo and Alberto Zappala, His/Her Attorney," in the amount of $11,000. A second check drawn on Adirondack payable to the order of "Maria Montalvo, as Legal Guardian of Carlos I. Reyes, a Minor and Alberto Zappala, His/Her Attorney," in the amount of $10,000 was also executed and delivered by State Farm.
Thereafter, the defendant Zappala forged the endorsements thereon of the plaintiff Maria Montalvo, in both her individual capacity and her capacity as legal guardian for the minor plaintiff Reyes. Zappala then presented said checks to the defendant Hudson United Bank, which cashed said checks and subsequently obtained payment of said checks from CT Page 7791 Adirondack.
The plaintiffs allege that payment of said instruments by Adirondack constituted acts of conversion pursuant to the Uniform Commercial Code, General Statutes § 43a-3-420.
The defendant Adirondack has filed a motion to dismiss claiming that the complaint fails to allege any basis for the Connecticut courts to exercise personal jurisdiction over the defendant Adirondack. The defendant argues that the exercise of personal jurisdiction in this case would not comport with constitutional due process.
The defendant Adirondack in support of its motion to dismiss has submitted an affidavit signed by the Executive Vice President and Secretary of Adirondack stating that it has no offices in Connecticut; it does not advertise in or solicit customers from Connecticut; that it does not issue credit cards to Connecticut residents; that it does not derive any significant income from commerce in or through Connecticut; it does not lend in Connecticut; and that any action relating to the checks issued by State Farm to Maria Montalvo and Alberto Zappala occurred solely with the State of New York.
 I
Pursuant to Connecticut Practice Book § 10-31 a motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person and (3) improper venue. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Richardello v. Butka, 45 Conn. Sup. 336, (1997), Gurliacci v. Mayer,218 Conn. 531, 544 (1991). "A motion to dismiss is used to assert jurisdictional flaws that appear on the record or are alleged by the defendant in a supporting affidavit as to facts not apparent on the record." Villager Pond, Inc. v. Darien, 54 Conn. App. 178, 182 (1999),Bradley's Appeal from Probate, 19 Conn. App. 456, 461-62 (1989). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Villager Pond, Inc. v. Darien,supra at 183, Mahoney v. Lensink, 213 Conn. 548, 567 (1990). "It is the law in our courts, as it is in the federal courts, that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Pamela B. v. Ment, 244 Conn. 296, 309 (1998). CT Page 7792
"The motion to dismiss shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." Practice Book § 10-31. "Where . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Barde v. Board ofTrustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988). "If the defendant challenges the court's jurisdiction, it is then incumbent on the plaintiff to prove the facts establishing the requisite minimum contacts."Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 53, 459 A.2d 503
(1983). "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54. In meeting this burden of proof, the plaintiff is not required to prove the defendant's liability, but only the commission of acts in relation to the state which justify the court's exercise of jurisdiction. Stephenson, Conn. Civ. Proc. (2nd Ed.) 96, p. 390, citing Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673
(1957).
 II
A challenge to personal jurisdiction involves a two-part inquiry.Hart, Nininger Campbell Associates v. Rogers, 16 Conn. App. 619, 624,548 A.2d 758 (1988); Knipple v. Viking Communications, Ltd., 236 Conn. 602,606, 674 A.2d 426 (1996). "The first inquiry is whether the applicable state long arm statute authorizes the assertion of jurisdiction over the [defendant]; and, [second,] if the statutory requirements are met, whether the exercise of in personam jurisdiction would violate constitutional principles of due process." Id.; Frazer v. McGowan,198 Conn. 243, 246, 502 A.2d 905 (1986). Gaudio v. Gaudio,23 Conn. App. 287, 298-99, 580 A.2d 1212 (1990); Knipple v. VikingCommunications, Ltd., supra; Basta v. Today's Adoption, Superior Court, judicial district of Waterbury, Docket No. 119321 (July 24, 1995, Sullivan, J), 1995 Ct. Sup. 8514.
Jurisdiction over a non-resident defendant is conferred by General Statutes § 52-59b, which provides as follows:
(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: CT Page 7793
 (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.
The plaintiffs rely on General Statutes § 52-59b (a)(3). Under General Statutes § 52-59b (a)(3), this court can exercise jurisdiction over a nonresident individual who (1) in person or through an agent (2) commits a tortious act outside the state (3) causing injury to a person or property within the state, (4) if the individual regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (5) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.
The plaintiffs' action alleges conversion pursuant to General Statutes § 42a-3-420, which provides as follows:
 (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) the payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or copayee.
(b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the CT Page 7794 instrument, but recovery may not exceed the amount of the plaintiffs interest in the instrument.
 (c) A representative other than a depository bank who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds it has not paid out.
Even if the affidavit of Adirondack's Executive Vice President is accurate, General Statutes § 52-59b still provided a basis for the exercise of personal jurisdiction over the defendant Adirondack in Connecticut. Adirondack does engage in a persistent course of conduct in Connecticut.
The injury to the plaintiffs' property occurred in Connecticut even if the alleged act of conversion of Adirondack occurred at its office in New York. Adirondack engaged in a continuing course of conduct in Connecticut by providing a checking account for a large insurance company, State Farm Mutual Automobile Insurance Company, which is licensed to do business in Connecticut. The checks which are the subject of this action are among many drawn on Adirondack by State Farm Mutual that were mailed across state lines to payees in Connecticut. The checks were presented for payment to Adirondack through normal banking channels. By providing a checking account to State Farm Mutual, which regularly does business in Connecticut, and thus, taking advantage of uniform procedures in Connecticut for the presentment and payment of those checks, Adirondack engaged in a persistent course of conduct in Connecticut.
In providing a checking account to State Farm Mutual, the defendant Adirondack was also subject to the Uniform Commercial Code, which is in effect in all states, including Connecticut. Adirondack was on notice that an action in conversion could be brought against it for payment of a forged instrument in Connecticut. Adirondack knew or should have known that State Farm Mutual Automobile Insurance Company was doing business in Connecticut, and that an act of conversion on its part would have consequences in Connecticut.
Whether Adirondack derives significant income from its commerce in Connecticut is not the determining factor for the exercise of personal jurisdiction. Adirondack derives substantial income from interstate commerce. Gilmore v. J.S. Inskip, Inc., 282 N.Y.S.2d 127, 132 (1967). Thus General Statutes § 52-596 (a)(3)(B) provides a basis for personal jurisdiction. Basta et al. v. Today's Adoption, et al., supra at 8523. CT Page 7795
Nevertheless, before this court can exercise personal jurisdiction over the individual defendants, it must be determined whether the exercise of in personam jurisdiction would satisfy the minimum contacts requirements of the due process clause. Frazer v. McGowan, 198 Conn. 243, 246,502 A.2d 905 (1986); Gaudio v. Gaudio, supra. 23 Conn. App. 298.
 "The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.' World-Wide Volkswagen Corporation v. Woodson [444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945)]; Milliken V. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.2d 278
(1940)."
The unilateral activity of those who claim some relationship with a nonresident cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of a defendant's activity, but it is essential in every case that there be some act by which the defendant avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462,471-72, 105A. S.Ct. 2174, 85 L.Ed.2d 528 (19841); Hanson v. Denckla,357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Basta v. Today'sAdoption, supra at 8525. "The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court here." Austin v. Austin, 9 Conn.L.Rptr. 211, 212 (June 4, 1993, Dranginis, J.) citing Burger King Corp. v. Rudzewicz, supra471 U.S. 474.
The documentation before the court, interpreted in a light most favorable to the plaintiff, shows that the conduct of the defendant Adirondack is regulated by the Uniform Commercial Code. The consequences of its payment of a forged instrument are known to Adirondack. The forgeries of the plaintiffs' signatures took place in Connecticut. The plaintiffs reside in Connecticut. Connecticut is the appropriate forum. In weighing and balancing the difficulties of Adirondack defending the action in Connecticut, as opposed to the plaintiffs prosecuting the action in New York, the court finds that the action belongs in a Connecticut court. Requiring the defendant to defend allegations against CT Page 7796 them in Connecticut does not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corporation v. Woodson, supra, 444 U.S. 286 (1980); International Shoe Co. v. Washington, supra,326 U.S. 310 (1945); Milliken v. Meyer, 311 U.S. 457 (1940).
The court finds that its exercise of in personam jurisdiction over the defendant Adirondack does not violate the minimum contacts requirement of the due process clause. Therefore, for the reasons set forth herein, the defendant Adirondack Trust Company's motion to dismiss is denied.
The Court
 ___________________ Arnold, J.